✎ ✎AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

CHROME HEARTS LLC

**SUMMONS IN A CIVIL ACTION**

V.

GUESS?, INC.; MACY'S INC.; ET.AL.

CASE NUMBER:   07 Civ. 4812 (AKH)

TO: (Name and address of Defendant)

Guess?, Inc. 1444 S Alameda Street, Los Angeles, California 90021;
Macy's Inc. 7 West Seventh Street, Cincinnati, Ohio 45202;
Cipriani Accessories, Inc.1415 Redfern Avenue, Far Rockaway, New
York, 11691; The Max Leather Group, Inc. 1415 Redfern Avenue, Far
Rockaway, New York, 11691; Jarrod Mark Kahn 408 East 79th Street,
Apartment A, New York, NY 10021.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

TUCKER & LATIFI, LLP
160 East 84th Street
New York, NY 10028
(212) 472-6262

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

# J. MICHAEL McMAHON

AUG 2 2 2007

CLERK

DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                     Date                                    *Signature of Server*


                                                   _____
                                                   *Address of Server*

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHROME HEARTS, LLC.

         Plaintiff,

v.

GUESS?, INC.; MACY'S INC.; CIPRIANI
ACCESSORIES, INC.; THE MAX LEATHER GROUP, INC.;
And JARROD MARK KAHN, an individual,

         Defendants.

Civil Action No.
07 Civ. 4812 (AKH)



AUG 22 2007
U.S.D.C. S.D. N.Y.
CASHIERS

---

# FIRST AMENDED COMPLAINT

        Plaintiff, **Chrome Hearts LLC**, by its attorneys, as and for its complaint, alleges upon information and belief:

## THE PARTIES

        1.  Plaintiff **Chrome Hearts, LLC.** ("Chrome Hearts" and/or "Plaintiff") is a limited liability company organized and existing under the laws of the State of Delaware, with an office and place of business at 915 N. Mansfield Avenue, Los Angeles, California 90038.

        2 (a).  Upon information and belief, defendant **Guess?, Inc.** is a California corporation with a principal place of business at 1444 S Alameda Street, Los Angeles, California 90021; is transacting and doing business within this judicial district and has committed the acts complained of herein within this judicial district.  **Guess?, Inc.** is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

        2 (b).  Upon information and belief, defendant **Macy's Inc.** is an entity of unknown origin having an office and place of business at 7 West Seventh Street, Cincinnati, Ohio

45202; is transacting and doing business within this judicial district and has committed the acts complained of herein within this judicial district. **Macy's Inc.** is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

      2(c).  Upon information and belief, defendant **Cipriani Accessories, Inc.** is an entity of unknown origin having an office and place of business at 1415 Redfern Avenue, Far Rockaway, New York, 11691; is transacting and doing business within this judicial district and has committed the acts complained of herein within this judicial district. **Cipriani Accessories, Inc.**, is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

      2(d).  Upon information and belief, defendant **The Max Leather Group, Inc.** is an entity of unknown origin having an office and place of business at 1415 Redfern Avenue, Far Rockaway, New York 11691; is transacting and doing business within this judicial district and has committed the acts complained of herein within this judicial district. **The Max Leather Group, Inc.** is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

      2(e).  Upon information and belief, defendant **Jarrod Mark Kahn** is an individual residing at 408 East 79th Street, Apartment A, New York, NY 10021 and is one of the conscious, dominant and active forces behind the wrongful acts of the corporate defendants Max Leather Group, Inc. and Cipriani Accessories, Inc., which wrongful acts he engaged in for the gain and benefit of defendants Max Leather Group, Inc. and Cipriani Accessories, Inc and for his own individual gain and benefit. Defendant Jarrod Mark Kahn is subject to the jurisdiction of this court pursuant to laws of this State and Rule 4 of the Federal Rules of Civil Procedure. Defendants Guess?, Inc, Macy's Inc., Cipriani Accessories, Inc., The Max Leather Group, Inc., and Jarrod Mark Kahn are hereinafter collectively referred to as "Defendants".

JURISDICTION

      3.  The first claim herein arises under the Copyright Laws of the United States, 17 U.S.C. §101 *et seq.*, the second claim herein arises under the Federal Trademark Act of 1946, 15 U.S.C. §1051 *et seq.* and, accordingly, subject matter jurisdiction for these claims is conferred on this Court by virtue of 17 U.S.C. §501 *et seq.* and 15 U.S.C. §1121, as well as 28 U.S.C. §1338 (a).

      4.  The third claim herein arises under the law of unfair competition and the statutes of the State of New York and is a claim joined with substantial and related claims under the Trademark Laws of the United States and, accordingly, subject matter jurisdiction for the fourth claim is conferred on this Court by virtue of 38 U.S.C. §1338 (b) and the doctrine of pendent jurisdiction.

      5.  Venue is founded on 28 U.S.C. §1391 (b) and (c) and §1400 (a).


COMMON ALLEGATIONS

      6.  Chrome Hearts has been designing, manufacturing and selling artistically styled leather goods, apparel, jewelry and accessories since early 1989.

      7.  The products, and/or their packaging of all Chrome Hearts goods all bear the trademark **CHROME HEARTS**.

      8.  Chrome Hearts sells a wide variety of quality artistic products, including leather pants, leather jackets, leather vests, various jewelry styles made of sterling silver, gold and platinum, including necklaces, bracelets, rings and wallet chains, belt buckles and a wide collection of other products, including its recent line of custom, one-of-a-kind furniture.

      9.  Chrome Hearts pioneered the idea of combining the look of rugged motorcycle looking apparel with fashion attire to make high end fashion apparel and accessories.  All of Chrome Hearts' leather products are adorned with sterling silver hardware, including all of the

3

buttons and ornamental pieces. Chrome Hearts further pioneered the look of suede inlay designs used on much of its leather clothing. Once thought of as only a look for outlaw motorcyclists, Chrome Hearts has created a fashion niche that is now coveted in the upper-most fashion circles.

10. Entertainers, such as Cher, Billy Idol, Aerosmith, Lenny Kravitz, Guns N' Roses, Seal, Madonna, Keith Richards, Danny Glover, Sting, Gloria Estefan, Christy Turlington, Naomi Campbell and Sharon Stone can all be seen in Chrome Hearts' fashions. Chrome Hearts products are sold in the exclusive CHROME HEARTS stores throughout the world, such as in New York, Paris, Los Angeles, Malibu, Las Vegas, Honolulu, Hong Kong, Taipei, Tokyo, Osaka, and in select speciality stores, such as Bergdorf Goodman in New York, Browns of London and the United Arrows and Intellectual Galleries boutiques in Japan.

10. In 1993, the Council of Fashion Designers of America ("CFDA") presented plaintiff Chrome Hearts with an unsolicited award as designer of the year for its innovative accessories and jewelry designs.

12. All Chrome Hearts products are hand made in Los Angeles by Chrome Hearts' craftsmen. The level of expert workmanship exercised by these individuals is superior and conforms to the strict standards established by Chrome Hearts.

13. Works designed by Chrome Hearts have been praised and recognized in numerous articles appearing in both trade publications and publications directed to the general public around the world, including articles in the United States, Germany, Japan and France. These articles have acclaimed the high artistry, fashion and style of Chrome Hearts' designs and the uniqueness of the designs.

14. Since 1991, Chrome Hearts' products have generated retail sales of over Three Hundred Fifty Million Dollars ($350,000,000).

15. Plaintiff Chrome Hearts is the owner of U.S. Trademark Registration No. 1,665,791 for the **CHROME HEARTS** mark in International Classes 14, 18, 25 and 26; U.S.

4

Trademark Registration No. 2,216,570 for the **CHROME HEARTS plus the Scroll Design** mark in International Class 14; U.S. Trademark Registration No. 2,216,575 for the **CHROME HEARTS plus the Horseshoe Design** mark in International Class 25; U.S. Trademark Registration No. 2,118,026 for the **CHROME HEARTS plus the Scroll Design** mark in International Classes 18 and 25; U.S. Trademark Registration No. 2,214,642 for the **CHROME HEARTS plus the Dagger Design** mark in International Class 18 and U.S. Trademark Registration No. 2,214,641 for the **CHROME HEARTS plus the Dagger Design** mark in International Class 25 (collectively referred to herein as the "Chrome Hearts Mark"). Chrome Hearts is entitled to the exclusive use and benefit of all of its Registrations.

16. The Chrome Hearts Mark has come to identify, in the United States and throughout the world, high quality leather fashions, jewelry and accessories designed and manufactured by Chrome Hearts.

17. Among many other U.S. Copyright Registrations, Chrome Hearts is the owner of U.S. Copyright Registration No. 705-234 for the **Classic Oval Design** belt buckle (hereinafter the "Copyrighted Work"). Annexed hereto and identified as *Exhibit 1* is a copy of the Registration for the Copyrighted Work. Also annexed hereto and identified as *Exhibit 2* is a photograph of the Copyrighted Work.

18. Chrome Hearts has duly complied in all respects with the provisions of Title 17 of the United States Code and has secured the rights and privileges accorded to the Copyrighted Work under the copyright laws of the United States.

## Defendant's Infringing Activities

### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §101 ET SEQ.

19. As the owner of the Copyrighted Work, plaintiff Chrome Hearts is entitled to the exclusive use of this design without the unauthorized use by third parties. Given the

widespread popularity and availability of Chrome Hearts' products, Defendants had access to the
work and upon information and belief Defendants have knowingly infringed upon Chrome Hearts'
copyrighted belt buckle design by manufacturing, distributing, selling and advertising piratical
copies of the buckle at wholesale and at retail through defendant Guess?, Inc.'s on line store at
www.guess.com and in GUESS?-named retail stores nationwide and throughout the world in
violation of 17 U.S.C. §501.   Annexed hereto and identified as *Exhibit 3* is a photograph of
Defendants' infringing belt buckle as it appears and is offered for sale on defendant Guess?, Inc.'s
website (hereinafter, the "Counterfeit Buckle").

     20.  Upon information and belief, Defendants have intentionally, knowingly and
willfully copied Chrome Hearts' Copyrighted Work to benefit from the widespread customer
recognition and acceptance of one of Chrome Hearts' most iconic designs and to capitalize upon the
market created by plaintiff Chrome Hearts for its products.  Defendants have manufactured,
advertised and sold the Counterfeit Buckle to various customers throughout the United States,
including within this judicial district, and throughout the world.

     21.  Upon information and belief, defendant Macy's Inc. placed a prominent pre
Father's Day advertisement in the New York Times advertising the Counterfeit Buckle for sale in
various select Macy's retail stores.  A copy of Macy's advertisement of the Counterfeit Buckle is
annexed hereto as *Exhibit 4.*

     22.  Upon information and belief, the aforesaid infringement by Defendants of
plaintiff Chrome Hearts' Copyrighted Work was and continues to be with the knowledge that such
design is copyrighted and the Defendants, in doing the acts complained of herein, have willfully
infringed upon Chrome Hearts' rights under the Copyright Laws of the United States, Title 17
U.S.C. §101, et seq.

     23.  Defendants' Counterfeit Buckle is almost identical to plaintiff Chrome Hearts'
genuine Copyrighted Work.  There can be no doubt that Chrome Hearts' copyrighted design was

6

employed to manufacture the molds used to make Defendants' piratical copy.

24. Defendants' infringement of plaintiff Chrome Hearts' Copyrighted Work is to the great and irreparable damage of plaintiff, and plaintiff Chrome Hearts is informed and believes, as indicated, that Defendants will continue such infringing acts unless enjoined by this Court.

25. Plaintiff has no adequate remedy at law and has suffered irreparable damage as a result of Defendants' acts as aforesaid in an amount thus far not determined, but believed to be in excess of Seven Hundred Thousand Dollars ($700,000).

### FEDERAL UNFAIR COMPETITION

26. Plaintiff Chrome Hearts repeats and realleges every allegation contained paragraphs 1 through 21, 23 and 24 as though fully set forth herein.

27. This claim arises under the provision of the Trademark Act of 1946, 15 U.S.C. 1051, et seq., particularly under 15 U.S.C. 1125(a) and alleges the use in commerce of a false designation of origin and false or misleading description of fact and false or misleading representation of fact.

28. By reason of the marketing, celebrity status and unsolicited press coverage generated for Chrome Hearts' products at the trade and consumer levels, and the unique quality of the products comprising the entire line of plaintiff's, these products are recognized by the trade and consumers as being products designed and hand crafted by plaintiff Chrome Hearts.

29. Chrome Hearts' products have become widely known among purchasers as articles that are designed and manufactured by plaintiff. These products are known to be quality items, with unique designs, made of the highest quality materials, and embodying expert craftsmanship.

30. The goodwill of the plaintiff Chrome Hearts and the favorable reputation residing in Chrome Hearts' products is a valuable asset belonging to plaintiff.

7

31. Defendants, with knowledge of the widespread recognition of Chrome Hearts' products among the relevant segment of the market and with the specific intent to exploit that recognition, have undertaken to make, advertise and sell the Counterfeit Buckle. It is Defendants' intention to have the ultimate purchasers of their Counterfeit Buckles believe that they are products that emanate from plaintiff Chrome Hearts.

32. By reason of Defendants' sale of the Counterfeit Buckles, the public has been and is being mislead as to the nature and quality of goods being sold by Defendants, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1051.

33. By reason of the foregoing, Defendants have used in commerce, on or in connection with the goods and/or services, a false designation of origin, a false or misleading description of fact or false or misleading representation of fact, including words, terms, names, devices and symbols or a combination thereof which is likely to cause confusion, or mistake, or to deceive as to the affiliation, connection, or association of such Defendants with plaintiff Chrome Hearts or as to the origin, sponsorship, or approval of Defendants' products, services or commercial activities by plaintiff with full knowledge of the falsity of such designations of origin or such descriptions or representations, all to the detriment of plaintiff Chrome Hearts.

34. Plaintiff Chrome Hearts has no adequate remedy at law and has suffered irreparable damage as a result of Defendants' acts as aforesaid in an amount thus far not determined, but believed to be in excess of Seven Hundred Thousand Dollars ($700,000).

## COMMON LAW UNFAIR COMPETITION

35. As a complete and third ground for relief, plaintiff Chrome Hearts hereby charges Defendants with common law unfair competition under the laws of the State of New York, and hereby realleges and reasserts all of the allegations contained in paragraphs 1 through 21, 23, 24, 28 through 31 and 33 hereof as though fully set forth herein.

8

36. Defendants' manufacturing, distribution advertising and sale of the Counterfeit Buckle incorporating the distinctive designs of plaintiff Chrome Hearts' products is likely to cause confusion between such products and the goods sold by plaintiff Chrome Hearts, thus constituting an infringement of plaintiff's valuable common law rights.

37. Upon information and belief, Defendants are "palming off" their infringing products as the high quality merchandise of plaintiff Chrome Hearts, and are knowingly enabling others to do the same and are thus deliberately and knowingly misappropriating and diverting plaintiff's valuable proprietary rights and goodwill, and the reputation symbolized thereby, thereby unfairly competing with plaintiff.

38. Upon information and belief, Defendants' unfair competition has caused and, if allowed to continue, will continue to cause sales of plaintiff's products to be lost and/or diverted to Defendant. Further, Defendants' unfair competition has caused substantial and irreparable damage and injury to plaintiff and in particular to its valuable goodwill and reputation, and unless enjoined by this Court, will continue to cause substantial and irreparable damage and injury to plaintiff.

39. Plaintiff has no adequate remedy at law and has suffered irreparable damage as a result of Defendants' acts as aforesaid in an amount thus far not determined, but believed to be in excess of Seven Hundred Thousand Dollars ($700,000).

**WHEREFORE**, plaintiff demands:

A.    that Defendants, its officers, agents, employees, attorneys and all persons acting in concert, participation or combination with Defendants, be preliminarily and permanently enjoined from infringing upon plaintiff's Copyrighted Work or any copyrighted design owned by plaintiff and from manufacturing, promoting, advertising and selling any product substantially similar to the copyrighted work of plaintiff, or any work substantially

9

similar to the proprietary designs of plaintiff;

        B.     that Defendants, its officers, agents, employees, attorneys and all persons acting in concert, participation or combination with Defendants, be preliminary and permanently enjoined from competing unfairly with plaintiff, from falsely representing and falsely designating the origin of Defendants' goods, from diluting the distinctive quality of plaintiff's trademark and from engaging in false advertising;

        C.     that Defendants be required to pay to plaintiff Chrome Hearts damages in a sum to be determined at trial and to account for all gains, profits and advantages derived by Defendants by the sale or advertisement of the Copyrighted Work or any work confusingly similar thereto; represented or advertised by Defendants to be a genuine Chrome Hearts product or its equivalent;

        D.     that the Counterfeit Buckles be recalled from all of Defendants' stores and customers and surrendered to plaintiff Chrome Hearts for destruction;

        E.     that plaintiff be awarded statutory damages by reason of the infringement of plaintiff's Copyrighted Work;

        F.     that plaintiff be awarded treble damages, punitive damages, reasonable attorneys fees and the costs and disbursements of this action;

//

//

//

//

//

//

//

G.    that plaintiff be granted an award of punitive damages in view of the willful and malicious nature of Defendants' tortious acts; and,

H.    that plaintiff have such other and further relief as the Court deems just and equitable.

Dated: New York, New York
       August 21, 2007

                                      Respectfully submitted,

                                      TUCKER & LATIFI, LLP
                                      *Attorneys for Plaintiff*
                                      160 East 84th Street
                                      New York, NY 10028
                                      (212) 472-6262


                                      Robert L. Tucker (RLT 1027)


Of counsel:
Brent H. Blakely, Esq.
915 N. Citrus Avenue
Hollywood, California 90038
323-464-7400

FORM VA



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

**For a Work of the Visual Arts**
UNITED STATES COPYRIGHT OFFICE

RE_____

**VA 705-234**

EF_____ ____ __ _____

*MAR 28 1995*
Month   Day   Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

Classic Oval

**NATURE OF THIS WORK ▼** See instructions

JEWELRY DESIGN

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give: Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

**2**

**a**

**NAME OF AUTHOR ▼**

CHROME HEARTS, INC.

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

**NOTE**

**NATURE OF AUTHORSHIP**  Check appropriate box(es).  **See instructions**
☐ 3-Dimensional sculpture
☐ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Design on sheetlike material
☐ Map
☐ Photograph
☒ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

**NATURE OF AUTHORSHIP**  Check appropriate box(es)  **See instructions**
☐ 3-Dimensional sculpture
☐ 2-Dimensional artwork
☐ Reproduction of work of art
☐ Design on sheetlike material
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

space for dates
birth and
death blank.

**3**

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
1990
Year
This information must be given in all cases.

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ November   Day ▶ 7   Year ▶ 1990
U.S.A.   ◀ Nation

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

CHROME HEARTS, INC.
937 North Citrus Avenue
Hollywood, California 90038

**TRANSFER** If the claimant(s) named here in space 2, give a brief statement of how the clai

**APPLICATION RECEIVED**
MAR 28 1995
**ONE DEPOSIT RECEIVED**
MAR 28 1995
**TWO DEPOSITS RECEIVED**

SEE INSTRUCTIONS
before completing
this space.

WRITE HERE

_E NUMBER AND DATE

# Exhibit 1

**MORE ON BACK ▶**  • Complete all applicable
• See detailed instructi

DO NOT WRITE HERE
Page 1 of ____ pages

FORM VA

CHECKED BY

☐ CORRESPONDENCE
   Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a and 6b for a derivative work; complete  only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼   ROBBINS, BERLINER & CARSON        Account Number ▼   DA 026964

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.    Name/Address/Apt/City/State/ZIP ▼
John P. Spitals
c/o ROBBINS, BERLINER & CARSON
201 N. Figueroa Street, 5th Floor
Los Angeles, California 90012-2628
              Area Code and Telephone Number ▶  (213) 977-1001

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  CHROME HEARTS, INC.
        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
John P. Spitals                                            date ▶ March 24, 1995

Handwritten signature (X) ▼

**8**

MAIL
CERTIFI-
CATE TO

Name ▼
John P. Spitals, c/o
ROBBINS, BERLINER &
CARSON

Certificate
will be
mailed in
window
envelope

Number/Street/Apartment Number ▼
201 N. Figueroa Street, 5th Floor

City/State/ZIP ▼
Los Angeles, California 90012-2628

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $20 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559

The Copyright Office
has the authority to ad-
just fees at 5-year inter-
vals, based on changes
in the Consumer Price
Index. The next adjust-
ment is due in 1996.
Please contact the
Copyright Office after
July 1995 to determine
the actual fee schedule.

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection
with the application, shall be fined not more than $2,500.

February 1993—100,000

U.S. GOVERNMENT PRINTING OFFICE 1993-342 581 60 501





**Plaintiff's Classic Oval Belt Buckle**

# Exhibit 2

GUESS

WOMEN   MEN   ACCESSORIES   SHOES

SEARCH



**Gothic Cross Belt**
A bold addition to your accessories wardrobe. Distressed genuine leather belt. Adjsutable silver buckle with a filligree gothic cross.

- 1 1/2" panel
- Domestic and/or imported

35914

**Click Swatch To View Color**



Color   BLACK

Size    34   Size Chart

Qty     1

Price:   $40.00

ADD TO BAG   SAVE TO WISHLIST

CUSTOMER CARE   TRACK ORDER   GIFT CARDS   STORES   ABOUT GUESS   [●] GUESS.CA   MARCIANO.COM
GUESS KIDS

© GUESS, Inc. 2007 All Rights Reserved.
Sitemap - Privacy Policy - Terms & Conditions - GUESS Inc.

# Defendant's Infringing Belt Buckle

# Exhibit 3

... more than I expect," French president, also voiced his progress in industrialized counties is causing climate change."

- more common sense...
- ...deal came after...
- diplomacy by Mrs. ...from Japan's prime minister Shinzo
- ...other Group of 8... the rotating presidency of the Group
- ...persuade Mr. Bush to... of 8 next January.
- position.
- ...focused, stubborn
- ...to reach a deal."
- German official who
- ...tion of anonymity...
- ...ce in that German

When last week Germany received a crucial endorsement of its plan from Japan's prime minister Shinzo Abe, who is scheduled to take over the rotating presidency of the Group of 8 next January.

But the German official said, "It was about winning over Bush to get on board and support the U.N. process on climate change." Mrs. Merkel telephoned Mr. Bush in recent weeks, and met him for lunch on



## a Joint Missile Shield

...by President Vladimir V. Putin of Russia and President ...of the Group of 8 initially aimed... Germany.

the only electro-com... ...be the global country ...Azait officials were... ...connection that

...he United States and ...have data from early ...les "is not entirely ...kicked around in the ...media recently, and ...the proposal has ...we have heard be... ...atin presented it in a ...and specific way.

the notion of a missile defense system in Europe is that it could intercept any intercept a missile launched from Iran is its own future. Russian airspace. Russian officials have pointed out that this would mean two military missiles colliding over Azerbaijan, and that the debris from any explosion could endanger Russian people and property. Mr. Putin said that locating the system in Azerbaijan could alleviate this risk, and that interceptors could be fired from Aegis cruisers, rather than

American official... ...ously to the offer... weeks of trying to ... language coming out... they said they viewed the right direction. "I think it's really

...ected ...aces ...t... d...



Celebrate Father's Day

★ macy's

all about his
HAYDEN

# Exhibit 4